UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 05-CIV-21386-GOLD/TURNOFF

MONTGOMERY BLAIR SIBLEY,

      Plaintiff,

v.

THE FLORIDA BAR, THE FLORIDA
SUPREME COURT, HON. RALPH
ARTIGLIERE, HARRY A. PAYTON,
JONI ARMSTRONG COFFEY, JEFFREY
MICHAEL COHEN, PATRICIA A.
DOHERTY ROBERT L. FELDMAN,
LEWIS W. FISHMAN, MARTIN D. KAHN
CHRISTOPHER S. KNOFIK, MANUEL
R. MORALES JR., J. HAMILTON "CHIP"
RICE, JR., and MICHAEL G. TANNER,

      Defendants.

_____/

## ORDER

THIS CAUSE came before the Court upon a Motion to Dismiss filed by Defendants

Florida Bar, Hon. Ralph Artigliere, Harry A. Payton, Joni Armstrong Coffey, Jeffrey Michael

Cohen, Patricia A. Doherty, Robert L. Feldman, Lewis W. Fishman, Martin D. Kahn,

Christopher S. Knopik, Manuel R. Morales, Jr., H. Hamilton "Chip" Rice, Jr., Michael G.

Tanner, Terry Russell, Tod Aronovitz and Herman Russomanno (herein, collectively

referred to as "Florida Bar Defendants") **[DE # 51, filed on January 1, 2006]**; a Motion to

Dismiss filed by Defendant Florida Supreme Court **[DE # 53, filed on January 13, 2006]**;

a Motion for Partial Summary Judgment as to Count 4 of the Second Amended Complaint

against Florida Supreme Court filed by Plaintiff Montgomery Blair Sibley ("Plaintiff") **[DE # 80, filed on March 22, 2006]**; and a Motion for Partial Summary Judgment filed by Plaintiff against the Florida Bar Defendants **[DE # 83, filed on March 22, 2006]**. In an Order dated January 20, 2006, I converted Defendants' Motions to Dismiss into Motions for Summary Judgment **[DE # 59]**. Thereafter, Defendant Florida Supreme Court filed Exhibits in Support of its Motion for Summary Judgment **[DE # 73]**. Additionally, the Florida Bar Defendants filed Exhibits in Support of their Motion for Summary Judgment **[DE # 75, 76, 77, & 78]**. In Response, Plaintiff filed a number of Declarations **[DE # 81, 84 & 85]**.

On September 14, 2006, I entered an Order granting a Motion to Quash two subpoenas issued by Plaintiff seeking to depose Justice Anstead and Clerk Hall of the Florida Supreme Court. Additionally, I granted a protective order **[DE # 104]** in order to prevent these individuals from being deposed. On October 6, 2006, Plaintiff filed a Motion for Reconsideration the September 14, 2006 Order **[DE #105]**.

The Second Amended Complaint is a Ten-Count Complaint **[DE # 45, filed on January 20, 2005]** which arises out of five separate events. The first event (Counts 1-3), centers on the Florida Bar Board of Legal Specialization and Education's ("BLSE", referred to collectively as the "BLSE Defendants,") withdrawal of accreditation of a proposed continuing legal education ("CLE") course to be taught by Plaintiff entitled "Disqualifying State and Federal Trial and Appellate Judges and Suing them Personally." The second event (Count 4) concerns a Show Cause Order issued by the Florida Supreme Court in active Case No. SC04-2129 which prohibited Plaintiff from filing *pro se* filings with the Florida Supreme Court. The third event (Count 5) concerns a disciplinary complaint filed

2

with The Florida Bar on December 12, 2002, regarding Plaintiff's fitness to practice law for his "willful failure to pay child support." The fourth event (Count 6) concerns another Bar disciplinary complaint filed on November 19, 2004, regarding Plaintiff's fitness to practice law. The final event (Counts 7-10) centers around a determination by the Florida Bar Elections Committee members that Plaintiff violated "the spirit of Policy 2.20" of the "Standing Board Polices: The Operational Policies of The Florida Bar."

## I. Background

The following facts are gleaned from the Court's review of the record, the parties' submissions, the briefs submitted by the parties, and the testimony presented at the Evidentiary Hearing to decide Plaintiff's Temporary Injunction. Plaintiff is an attorney who is a resident and citizen of Maryland. (Second Amended Compl., ¶ 4).[1] Plaintiff is a member of the Bars of Florida, New York, and District of Columbia. (*Id.*). Plaintiff advertises as "The Center for Forfeiture Law-A private law firm." (*Id.*). Defendant Florida Bar is an official arm of the Florida Supreme Court. (Second Amended Compl., ¶ 5 ). Defendants Hon. Ralph Artigliere, Harry A. Payton, Joni Armstrong Coffey, Jeffrey Michael Cohen, Patricia A. Doherty, Robert L. Feldman, Lewis W. Fishman, Martin D. Kahn, Christopher S. Knopik, Manuel R. Morales, Jr., H. Hamilton "Chip" Rice, Jr., and Michael G. Tanner are

---

[1] In assessing whether the party moving for Summary Judgment has borne its burden of demonstrating want of actual dispute as to a material fact, I must view all evidence introduced and all factual interferences from that evidence in the light most favorable to the party opposing the Motion for Summary Judgment, and all reasonable doubts about the facts should be resolved in favor of the nonmoving litigant. *Impossible Electronics Techniques, Inc., v. Wakenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). In constructing this background section, I viewed all of the evidence in the light most favorable to Plaintiff.

3

members of the Florida Bar Board of Legal Specialization and Education ("BLSE"). (Second Amended Compl., ¶ 6).    Defendants Terry Russell, Tod Aronovitz and Herman Russomanno are members of the Florida Bar Elections Committee. (*Id.*). The first group of defendants will be referred to as the BLSE Defendants and the later group will be identified as the Florida Bar Elections Committee members.

## A. 2002 Bar Complaint
## for Failure to Pay Child Support

On December 12, 2002, Florida Bar received a disciplinary complaint regarding Plaintiff's fitness to practice law in the State of Florida for his willful failure to pay child support. (Second Amended Compl., ¶ 7). According to Plaintiff, the 2002 bar complaint has yet to be resolved by Florida Bar. (*Id.*).

## B. Plaintiff's CLE Course Credit Rescinded

Florida Bar is designated as the sole accrediting authority of Florida Continuing Legal Education by the Florida Supreme Court. (Second Amended Compl., ¶ 8). Pursuant to Florida Bar Rule 6-10.3 "Minimum Continuing Legal Education Standards," "Every member except those except under rule 6-10.3(c)(4) and (5) shall comply and report compliance with the continuing legal education requirement." (*Id.*).  On April 23, 2004, pursuant to Defendant Florida Bar's Rules, Plaintiff was given approval to teach a course entitled "Disqualifying State and Federal Trial and Appellate Judges and Suing them Personally" for three general CLE credits. (Second Amended Compl., ¶ 9).

On or about August 13, 2004, Joanne Sargent, an attorney for the Florida Third District Court of Appeal, wrote to Executive Director of the Defendant Florida Bar John F.

Harkness, Jr., objecting to the approval of Plaintiff's course for CLE credit. (Second Amended Compl., ¶ 10). In the letter, Sargent wrote, "A review of the enclosed orders in Mr. Sibley's cases will convince you, I believe, that the proposed course should not be approved for C.L.E. credit." (*Id.*).

In response to Sargent's compliant, on or about November 1, 2004, the BLSE Defendants met and temporarily rescinded the course's credit and requested that Plaintiff provide them with more information as to the "intent" of the course given the objectives of the course approval standards cited in BLSE Policy 5.03. (Second Amended Compl., ¶ 11).

Florida Bar prepared a letter dated November 17, 2004, addressed to Plaintiff regarding his course. Plaintiff allegedly did not receive the letter until January 28, 2005. (Second Amended Compl., ¶ 14). After having an opportunity to submit additional information to BLSE, on or about January 21, 2005, the BLSE Defendants permanently rescinded the course's accreditation. (Amended Second Compl., ¶ 16).[2] On or about

---

[2] Cohen, who is a member of the BLSE, submitted an Affidavit. According to the Affidavit:

3. Montgomery Sibley's program entitled "Disqualifying State and Federal Trial and Appellate Judges and Suing them Personally" was initially approved for course credit by Staff for the Legal Specialization and Education Department on or about April 23, 2004. CLE programs are routinely reviewed and accredited by staff in accordance with BLSE policy. The BLSE, however, retains ultimate jurisdiction to review objections related to accreditation.

4. After receiving an objection to CLE accreditation of Mr. Sibley's program, the BLSE reviewed Mr. Sibley's program for the first time on November 5, 2004. The BLSE determined that the program lacked significant intellectual or practical content as required by BLSE Policy 5.03(a)(1) and temporarily rescinded accreditation pending receipt of additional information from Mr. Sibley regarding the program. The additional information was to be provided

by Mr. Sibley by December 20, 2004 as expressed in a November 17, 2004 letter to Mr. Sibley from staff which advised him of BLSE's November 5, 2005 action. See Letter from Dawna Bicknell to Mr. Sibley dated November 17, 2004, attached as Exhibit "A."

5. I was advised that staff extended the deadline to provide additional information upon receiving a fax from Mr. Sibley on January 28, 2005 stating that he had not received notification of the BLSE's decision to temporarily rescind accreditation.

6. The BLSE's Rules and Policies Committee unanimously recommended to the BLSE that, based on a careful consideration and review of additional information provided by Mr. Sibley, accreditation be permanently rescinded.

7. Mr. Sibley requested, and was permitted, to appear before the BLSE. After providing Mr. Sibley an opportunity to be heard, the BLSE stated that it was willing to reconsider its decision to rescind accreditation. The BLSE asked Mr. Sibley to prepare additional information to address the BLSE's course accreditation standards under Policy 5.03(a)(1)-(3).

8. Upon review of the additional material provided by Mr. Sibley, the BLSE reconsidered, and upheld, its decision to rescind accreditation of Mr. Sibley's program for failure to comply with Policy 5.03(a)(1) or (a)(3). As accurately reflected in the attached notification letter, the BLSE determined that Mr. Sibley's program did not have "significant intellectual or practical content. . . . designed to increase or maintain the attorney's professional competence as a lawyer. . . ." as required by Policy 5.03(a)(1). See Letter from Dawna Bicknell to Montgomery Sibley dated May 9, 2005, attached as Exhibit "A." The Board further determined that Mr. Sibley's program did not offer "materials that are prepared and activities conducted by an individual or group qualified by practical or academic experience. . . " as required under Policy 5.03(a)(3). See Exhibit "B." The BLSE was acting in its official capacity in rescinding CLE accreditation based on a determination that Mr. Sibley's Program did not comply with BLSE standards. Mr. Sibley did not seek review of the BLSE's final decision to permanently rescind accreditation.

9. The BLSE acted in accordance with BLSE Policy in determining that the accreditation for Mr. Sibley's program should be rescinded for failure to comply with Policy 5.03(a)(1) and (a)(3).

10. The BLSE's action is consistent with the BLSE's past practices.

January 28, 2005, Plaintiff learned that his course was losing accreditation. (Second Amended Compl., ¶ 17). Upon learning that his course was losing accreditation, Plaintiff contacted the Florida Bar. (Id.). On February 16, 2005, the Florida Bar communicated to Plaintiff that their review of Plaintiff's course resulted in the permanent rescinding of accreditation based on upon BLSE Policy 5.03(a)(1) because the Program lacked "significant intellectual or practical content. . . . designed to increase or maintain the attorney's professional competence as a lawyer. . . ." (Second Amended Compl., ¶ 18).

A meeting was held on March 10, 2006 in Fort Lauderdale, Florida to discuss the course's accreditation. (Second Amended Compl., ¶ 19). At the meeting, agents of the Florida Bar allegedly indicated that the course might be approved if the title was changed to omit "and Suing them Personally." (Id.). Upon Plaintiff's refusal to change the title of the course, the BLSE allegedly directed Plaintiff to provide proof of compliance with Policy 5.03(a)(1)-(3). (Id.). On April 4, 2005, Plaintiff complied with the request for additional information. (Second Amended Compl., ¶ 20). On May 9, 2004, BLSE advised Plaintiff that the members of the BLSE had "reconsidered and upheld" its prior decision to rescind accreditation" of the course upon Policy 5.03(a)(1) and (3).

## C. Pending Florida Supreme Court Case

Plaintiff filed a lawsuit in August 2003. (Second Amended Compl., ¶ 12). On November 3, 2004, the Florida Third District Court of Appeal entered its opinion in Case No. 3D03-2083. (Id.) In an Opinion of the Florida Third District Court of Appeal, the Court

---

The BLSE Defendants also submitted similar Affidavits from Defendants Coffey, Kahn, Payton, and Rice.

held:

> We direct the clerk of this court to reject any further filings in this court on the former husband's behalf unless signed by a member of the Florida Bar (other than the former husband). Any other cases that are pending in this court in which the former husband is representing himself will be dismissed unless a notice of appearance signed by a member in good standing of the Florida Bar (other than the former husband) is filed in each case within thirty days of this opinion becoming final.

(*Id.*).

On November 11, 2004, Plaintiff filed a "Petition to Review the Actions, Policies and Procedures of the Florida Judicial Qualifications Commission" with the Florida Supreme Court which was assigned Case No.: SC04-2129. (Second Amended Compl., ¶ 13). Plaintiff's petition sought review by the Florida Supreme Court of the Florida Judicial Qualification Commission's decision not to refer for hearings Plaintiff's complaint against Judges Ramirez and Levy of the Florida Third District Court of Appeal for engaging in *ex parte* communication with Plaintiff's opposing counsel immediately prior to oral argument and for the Florida Third District Court of Appeal's subsequent refusal to disclose the nature of that *ex parte* communication. Additionally, Plaintiff's petition sought review of the entire Florida Third District Court of Appeal's allegedly regular practice of engaging in conduct which violates Canon 3.B(7). (*Id.*). Moreover, Plaintiff complained of "the usurpation of authority by the Florida Judicial Qualifications Commission Executive Director Kennerly" for denying Plaintiff's complaints concerning the above described behavior. (*Id.*).

On April 14, 2005, the Florida Supreme Court entered its order in Case No.: SC04-2129 stating in pertinent part:

Since June 6, 2002, [Plaintiff] has initiated numerous pro se cases with the Court, all of which appear to emanate out of his 1994 dissolution of marriage proceedings in the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County, Florida.  None of [Plaintiff]'s filings have resulted in any relief. Because [Plaintiff] has abused the processes of the Court with his numerous meritless filings, the Court finds that a limitation on [Plaintiff]'s ability to initiate any further pro se proceedings in this Court may be necessary in order to further the constitutional rights of access of other litigants in that it would permit this Court to devote its finite resources to the consideration of legitimate claims filed by others. See In Re McDonald, 489 U.S. 180, 184 (1989)(noting that "[e]very paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources").  The Court notes that the Third District Court of Appeal has already imposed such a sanction on [Plaintiff]. See Sibley v. Sibley, 885 So.2d 980, 988 (Fla. 3d DCA 2004)(directing the clerk of court to "reject any further filings in this court on the former husband's behalf unless signed by a member of The Florida Bar (other than the former husband)").  Given [Plaintiff]'s clear abuse of the judicial process in the Court, **[Plaintiff] is hereby directed to show cause on or before April 25, 2005, why the Court should not impose upon him a sanction for his litigiousness, such as directing the Clerk of Court to reject for filing any future pleadings, petitions, motions, documents, or other filings submitted by him related to his 1994 dissolution of marriage proceedings unless they are signed by a member in good standing of The Florida Bar other than [Plaintiff]**. (Emphasis Added).

(Second Amended Compl., ¶ 21).

On April 26, 2005, Plaintiff responded to the Order to Show Cause in Case No.: SC04-2129. (Second Amended Compl., ¶ 22). To date, Florida Supreme Court has not issued an order in SC04-2129. (Id.).

### D. 2004 Bar Complaint

On November 19, 2004, the Florida Bar received a disciplinary complaint regarding Plaintiff's fitness to practice law in the State of Florida allegedly as a result of the November 3, 2004, opinion of the Florida Third District Court of Appeal. (Second Amended Compl., ¶ 15).  To date, Plaintiff alleges that the November 2004 Bar complaint has not been

9

resolved. (*Id.*).[3]

### E. President-Elect of Florida Bar Election

Under the Florida Bar Rules, between November 15 and December 15 of each year,

persons interested in seeking the position of President-Elect of the Florida Bar must file

nominating petitions with the Florida Bar signed by 1% of the members in good standing

of the Florida Bar. (Second Amended Compl., ¶ 24).   Thereafter, on March 1, of the

following year, a ballot is mailed out to all the members in good standing to permit voting

---

[3] Tiffany Collins, who is employed by The Florida Bar as Bar counsel, submitted an Affidavit. The Affidavit states:

3. In my position as Bar counsel, I am responsible for overseeing the processing of two Bar complaints regarding Montgomery Sibley. The first complaint was initiated by The Florida Bar on December 12, 2002, regarding Montgomery Sibley's alleged "willful failure to pay child support"; the second Bar complaint was filed by Jay M. Levy on November 19, 2004, for allegedly filing lawsuits without merit.

4. The Second Judicial Circuit Grievance Committee "B" ("grievance committee") has found probable cause to pursue further disciplinary proceedings with regard to the above-referenced disciplinary cases. Specifically, on November 3, 2005, the grievance committee found probable cause for the violation of Rule 4-8.4(h)(willful refusal, as determined by a court of competent jurisdiction, to timely pay child support obligation), Rules Regulating The Florida Bar. *See* Notice of Finding of Probable Cause for Further Disciplinary Proceedings, attached as Exhibit "A." On December 1, 2005, the grievance committee found probable cause for the violation of Rule 4-3.1(Meritorious Claims), Rules Regulating The Florida Bar. *See* Notice if Finding of Probable Cause for Further Disciplinary Proceedings, attached as Exhibit "B."

5. I am responsible for drafting formal complaints on behalf of The Florida Bar against Mr. Sibley in accordance with Rule 3-7.4(I), of the Rules Regulating The Florida Bar. The aforementioned disciplinary proceedings related to Mr. Sibley are ongoing.

on the candidates so nominated. (Id.).  In late October 2005, Plaintiff announced his candidacy for President-Elect of the Florida Bar and received the addresses of each member of the Florida Bar.  (Id.). Plaintiff sent out 50,635 emails addressed to members of the Florida Bar announcing his candidacy for President-Elect in early November. (Second Amended Compl., ¶ 26).[4]

On November 10, 2005, Plaintiff received an email from the General Counsel of the Florida Bar containing the following enclosure:

### SUMMARY OF ELECTIONS COMMITTEE ACTION

Pursuant to Standing Board Policy 2.21, Chairman Terry Russell, along with Tod Aronovitz and Herman Russomanno, sitting as the Elections Committee of The Florida Bar, met by conference call on Friday, November 4, 2005, to consider certain communications of Montgomery Blair Sibley to members of the bar in connection with his intentions to seek the presidency of The Florida Bar.

In keeping with the committee's authority to interpret bar policy and to recommend sanctions to the board of governors regarding campaigning for nomination and election to the office of [P]resident[E]lect., the committee determined:

1. Mr. Sibley's various November 3, 2005 e-mail messages to bar members and his advance distribution of nominating petitions prior to November 15, 2005 violate the spirit of Standing Board Policy 2.20(c)(2) which discourages such communications.

2. Although Mr. Sibley's actions do not appear to be sanctionable under bar policy, his messages may have nevertheless placed other aspirants to the office of [P]resident-[E]lect who have not utilized such

---

[4] At the December 22, 2005 hearing to decide his Motion for Temporary Injunction, Plaintiff conceded that he sent to emails to members of the Florida Bar - one before the November 15, 2005 deadline and one after the deadline.  Plaintiff informed the Court that he sent the first email on November 3, 2005 and the second email on November 20, 2005.

messages at some political disadvantage.

> Therefore, the committee recommends that The Florida Bar appropriately advise other aspirants to the office of [P]resident-[E]lect of these determinations and release them to distribute nominating petitions and mass communications similar to Mr. Sibley's prior to the date of their actual qualification.

(Second Amended Compl., ¶ 27).[5]

Plaintiff alleges that this "determination" which stated that Plaintiff had "violate[d] the

spirit of Standing Board Policy 2.20(c)(2)" was made without prior notice to Plaintiff or an

opportunity to be heard. (Second Amended Compl., ¶ 28).[6]

At the hearing held to decide Plaintiff's Motion for a Temporary Injunction,

Russomanno and Aronovitz testified that they are members of the Florida Bar Elections

Committee.   On November 4, 2005, three members of the Elections Committee,

Russomanno, Aronovitz  and Russell met with Paul Hill, General Counsel of the Florida

_____

[5] Following the hearing held to decide Plaintiff's Motion for a Temporary Injunction, Defendant Florida Bar filed the Affidavit of Montina E. Ruffin **[DE # 47]**.  Ruffin is the Assistant to the President of the Florida Bar, Alan Bookman. **[DE # 47]**.  Ruffin swears that she was the person responsible for emailing the members of the Florida Bar Elections Committee with information concerning Plaintiff's two email communications to the members of the Florida Bar.  Attached to her affidavit are the emails Plaintiff sent to the members of the Florida Bar. **[DE # 47, Exhibits "A" & "B"]**.

[6] In relevant part, Standing Board Policy 2.20(c)(2) states:

> Prior to the date of their actual qualification, aspirants to the office of [P]resident-[E]lect may determine the viability of their candidacy by limited one-on-one contact with other bar members.  Contacts in a group setting at which aspirants have a valid reason for attendance, other than their potential candidacy, are also considered acceptable.  Organized campaigning, that includes but is not limited to such conduct as mass communications, visitations at law offices or bar association meetings, group speeches, or other formalized political activity for the purpose of solicitation of support, is discouraged.

Bar, telephonically to discuss Plaintiff's November 3, 2005 email communications.  At the

November 4, 2005 committee meeting, the members of the Elections Committee determined

that Plaintiff had violated the spirit of Standing Board Policy 2.20(c)(2) and Rule 2-4.5[7] of

the Rules Regulating the Florida Bar by sending email communications to the members of

the Florida Bar prior to November 15, 2005.  Following the November 4, 2005 meeting, Hill

issued the email dated November 14, 2005 "Summary of Elections Committee Action."[8]

---

[7] Rule 2-4.5(b) of the Rules Regulating the Florida Bar provides that "[e]xcept as otherwise specified in standing board policies, no campaigning for the purposes of seeking support for the nomination of a candidate to the office of [P]resident-[E]lect shall be conduced prior to November 15 of the year preceding the election."

[8] In an Affidavit submitted by Russell, Russell states:

2. I am the Chairman of the Elections Committee of The Florida Bar.

3. On November 3, 2005, I received an e-mail from Monica Ruffin, Assistant to President of The Florida Bar, regarding Montgomery Blair Sibley's e-mails to members of The Florida Bar announcing his candidacy for President-Elect.

4. On November 4, 2005, the Elections Committee, comprised of myself, Tod Aronovitz and Herman Russomanno, met by conference call to consider Mr. Sibley's communications to Florida Bar members regarding his intention to seek the presidency of The Florida Bar and to  determine whether his actions violated the rules or policies of The Florida Bar.  The Elections Committee relied upon Standing Board Policy 2.20(c)(2) and Bylaw 2.4.5 of the Rules Regulating The Florida Bar.

5. After careful consideration, the Elections Committee determined that Mr. Sibley's various e-mail messages and advance distribution of nominating petitions prior to November 15, 2005 violated the spirit of the Standing Board Policy 2.20(c)(2).

6. The Elections Committee also determined that Mr. Sibley's actions, while apparently not sanctionable under Bar policies, placed other aspirants to the office of the President-Elect at a disadvantage, and accordingly recommended that The Florida Bar allow other aspirants to distribute

Francisco Angones, the only other candidate for President-Elect of the Florida Bar testified that he first learned of the decision of the Elections Committee rendered on November 3, 2005 when he received the email transmission from Hill on November 14, 2005. Mr. Angones testified that being allowed to contact Florida Bar members before November 15, 2005 did not help his candidacy, that he did not forward the email from Hill to anyone and that he did discuss the contents of the November 14, 2005 email with two partners at his law firm.[9]

## F. Procedural History

On December 22, 2005, I held an evidentiary hearing on Plaintiff's Emergency

_____

nominating petitions and mass communications similar to Mr. Sibley's prior to the date of their actual qualification.

7. It is my understanding that the only other aspirant for President-Elect, Frank Angones, was notified of the Elections Committee's determination, as was Alan Bookman, President of the Bar, Hank Coxe, President-Elect of the Bar; John Harkness, Executive Director of the Bar; Paul Hill, General Counsel of the Bar; and Montina Ruffin, Assistant to the President of the Bar.

8. The Elections Committee did not recommend any sanctions against Mr. Sibley.

[9] At the hearing to decide Plaintiff's Motion for Temporary Injunction, John Harkness, Executive Director of Florida Bar, testified that Plaintiff did not obtain the required number of nominating petitions to support his bid to become a candidate for President-Elect of the Florida Bar. The Florida Bar rules require all aspirants to candidacy for President-Elect to obtain nominating petitions signed by 1% of all members in good standing of the Florida Bar. Thus, Plaintiff was required to obtain 691 nominating petitions in order to become a candidate for President-Elect of the Florida Bar. In total, Plaintiff submitted 82 nominating petitions to support his candidacy for President-Elect of the Florida Bar. Of the 82 nominating petitions Plaintiff submitted to the Florida Bar, the Florida Bar received 29 petitions before November 20, 2005. Plaintiff submitted 41 nominating petitions after November 20, 2005. The remaining 12 petitions are undated.

14

Motion for Temporary Restraining Order and Temporary Injunction. At that hearing, the parties presented evidence and testimony concerning the issues in this lawsuit. Having considered the evidence presented at the hearing, I concluded that Plaintiff's Motions for Temporary Restraining Order and Temporary Injunction were without merit **[DE #50]**. Thereafter, the Florida Bar Defendants and Florida Supreme Court each filed Motions to Dismiss **[DE # 51 & 53]**. I converted Defendants' Motion to Dismiss into Motions for Summary Judgment **[DE # 59]**. Plaintiff cross-moved for Summary Judgment against the Florida Bar Defendants and the Florida Supreme Court **[DE 80 & 83]**. I must now address the merits of the pending motions **[DE 51, 53, 80 & 83]**.

## II. Standard for Summary Judgment

Rule 56(c) of Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). A factual

dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).

In assessing whether the movant has met its burden, I should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts of fact in favor of the non-moving party. *Denney*, 247 F. 3d at 1181. In determining whether to grant summary judgment, I must remember that "[c]redibility determinations, weighting of the evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 256.[10]

If the party seeking summary judgment meets the initial burden of demonstrating that there is no genuine issue of material fact, the burden then shifts to the non-moving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). "A nonmoving party, opposing a motion for summary judgment supported by affidavits[,] cannot

---

[10] I am cognizant that I must apply a different standard when evaluating the current cross-Motions for Summary Judgment than I previously employed when evaluating Plaintiff's Motion for a Temporary Injunction. Plainly, Plaintiff bore a significantly different burden in moving for Temporary Injunction than he now faces in opposing Defendants' Motions for Summary Judgment. In considering Plaintiff's Motion for Temporary Injunction, I could assess the likelihood that Plaintiff's evidence would be persuasive to a fact-finder in light of Defendants' evidence. In resolving whether Plaintiff would likely succeed on the merits, I considered the credibility of witnesses and was not limited to resolving any disputed issues of fact in the light most favorable to the non-moving party. However in considering the current Cross-Motions for Summary Judgment, I have the duty to construe the evidence presented to it in the light most favorable to the non-moving party. Imagining Business Machines, LLC v. BancTec, Inc., 456 F.3d 1186, 1192-1193 (11th Cir. 2006)(reversing a district court for improperly employing the preliminary injunction standard when evaluating a motion for summary judgment).

16

meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Id.* (citation omitted). The evidence "cannot consist of conclusory allegations or legal conclusions." *Id.* (citation omitted).   Furthermore, unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. *See Midwestern Waffles, Inc., v. Waffle House, Inc.*, 734 F.2d 705, 714 (11th Cir. 1984). [11]   *See also Earley v. Champion Internat'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)(noting that conclusory, self serving, or uncorroborated allegations in affidavit could not create issue of fact sufficient to defeat well-supported summary judgment); *The Lovable Co. v. Honeywell, Inc.*, 431 F.2d 668, 674 (5th Cir. 1970)(holding that an affidavit setting forth legal conclusions cannot be treated as factual support for party's position on pending motion).

---

[11] Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits offered in support or opposition to summary judgment must be made on the basis of personal knowledge ans set forth facts that would be admissible in evidence.  In relevant part, Rule 56(e) states:

**(e) Form of Affidavits; Further Testimony; Defense Required**. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.   The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in the rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.   If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

### III. Plaintiff's Declaration

In this case, Plaintiff relies almost exclusively upon his own Declaration and "Concise Statement of Material Facts As To Which Claimant Contends There Is No Genuine Issue To Be Tried" in an attempt to defeat the Florida Bar's Converted Motion for Summary Judgment.[12]  However, I have several concerns with Plaintiff's use of his own Declaration to survive Summary Judgment.  First as a preliminary matter, the Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value. *Earley*, 907 F.2d at 1081.  Second, in ruling upon a Rule 56 Motion, "a district court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where facts specifically averred by the non-movant contradict facts specifically averred by the movant, the motion must be denied. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-889 (1990).  That is different from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. *Id.*  As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." *Id.*  The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Id.*  This is exactly what Plaintiff has improperly done in this case.

In addition to filing a Response to Florida Bar Defendant's Converted Motion for Summary Judgment, Plaintiff filed his own Cross-Motion for Summary Judgment **[DE # 83]**.

---

[12] Plaintiff has also submitted a number of Exhibits attached to his Declaration pertaining to the CLE course **[DE # 84]**.  I have given these Exhibits careful examination as well.

18

### III. Plaintiff's Declaration

In this case, Plaintiff relies almost exclusively upon his own Declaration and "Concise Statement of Material Facts As To Which Claimant Contends There Is No Genuine Issue To Be Tried" in an attempt to defeat the Florida Bar's Converted Motion for Summary Judgment.[12]  However, I have several concerns with Plaintiff's use of his own Declaration to survive Summary Judgment.  First as a preliminary matter, the Eleventh Circuit has consistently held that  conclusory allegations without specific supporting facts have no probative value. *Earley*, 907 F.2d at 1081.  Second, in ruling upon a Rule 56 Motion, "a district court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where facts specifically averred by the non-movant contradict facts specifically averred by the movant, the motion must be denied. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-889 (1990).  That is different from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. *Id.*  As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." *Id.*  The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Id.*  This is exactly what Plaintiff has improperly done in this case.

In addition to filing a Response to Florida Bar Defendant's Converted Motion for Summary Judgment, Plaintiff filed his own Cross-Motion for Summary Judgment **[DE # 83]**.

---

[12] Plaintiff has also submitted a number of Exhibits attached to his Declaration pertaining to the CLE course **[DE # 84]**.  I have given these Exhibits careful examination as well.

18

Plaintiff's "Statement of Material Facts as to which Claimant Contends There is No Genuine Issue to Be Tried," is based entirely on his own Declaration.   However, Plaintiff's Declaration contains a collection of self-serving conclusory allegations mirroring the allegations contained in his Second Amended Complaint.  As stated above, it is well established that a Declaration containing self-serving, conclusory allegations are insufficient standing alone to raise a genuine issue of fact for trial so as to either grant or to avoid Summary Judgment. *See generally, Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)(conclusory allegations without specific supporting facts have no probative value).

### IV. Legal Analysis
### A. Is there a Basis for the Court to Abstain?
### from Hearing Counts 4, 5, 6

In Counts 5[13] and 6[14] of the Second Amended Complaint, Plaintiff seeks for this

---

[13] Specifically, Count 5 states:

46. Defendant Florida Bar will violate Plaintiff's rights secured by the Common Law, the First and Fourteenth Amendments of the Federal Constitution and Article I, § 4 of the Florida Constitution if it is permitted to adjudicate the complaint against Plaintiff filed on December 12, 2002 due to (i) the passage of time and (ii) the lack of impartiality of the Defendant Florida Bar and Defendant Florida Supreme Court as witnessed by the allegations contained herein.

47. Plaintiff will be damaged thereby as his right to an impartial tribunal will have been denied as recognized in *Elrod v. Burns*, 427 U.S. 347 (1976).

[14] Specifically, Count 6 states:

49. Defendants Florida Bar will violate Plaintiff's rights secured by the Common Law, the First and Fourteenth Amendments of the Federal

Court to assert jurisdiction over the state disciplinary proceedings currently pending against him before the Florida Bar. In Count 4, Plaintiff requests that I enter a declaratory judgment stating that his rights secured by Common Law, First and Fourteenth Amendments of the Federal Constitution and Article I, § 4 of the Florida Constitution preclude the Florida Supreme Court from barring Plaintiff from appearing *pro se*.[15]

The Florida Bar argues that the principles of abstention articulated in *Younger v. Harris*, 401 U.S. 37 (1971) require this Court to abstain from hearing Counts 5 and 6 of the Second Amendment because such claims involve or call into question ongoing state proceedings. In addition to *Younger* abstention, Florida Supreme Court argues that the

---

Constitution and Article I, § 4 of the Florida Constitution if it is permitted to adjudicate the complaint against Plaintiff filed on November 19, 2004, due to the holding of the United States Supreme Court in *Donovan v. City of Dallas*, 377 U.S. 408, 413 (1964) and (ii) the lack of impartiality of the Defendant Florida Bar and Defendant Florida Supreme Court as witnessed by the allegations contained herein.

50. Plaintiff will be damaged thereby as his right to an impartial tribunal will have been denied as recognized in *Elrod v. Burns*, 427 U.S. 347 (1976).

[15] Specifically, Count 4 states:

43. Defendants Florida Supreme Court will violate Plaintiff's rights secured by the Common Law, the First and Fourteen Amendments of the Federal Constitution and Article I, § 4 of the Florida Constitution if it is permitted to deny access to court by Plaintiff proceeding *pro se* before Defendant Supreme Court as it seeks to do in its order of April 14, 2005, entered in Case No.: SC04-2129.

44. Plaintiff will be damaged thereby as the Defendants Florida Supreme Court will have been denied, chilled and/or inhibited Plaintiff's state and federally authorized right to free speech and thus prevented Plaintiff from access to court for redress of his grievances in violation of, among other articulations of those rights, *Donovan v. City of Dallas*, 377 U.S. 408, 413 (1964).

20